712 So.2d 223 (1998)
SUCCESSION OF Rosina Pulitzer MEXIC.
No. 97-CA-1745.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1998.
Cameron C. Gamble, Metairie, for Appellee.
Leonard M. Berins, Gerald Wasserman, Bach & Wasserman, Metairie, for Appellant.
Before KLEES, BYRNES and PLOTKIN, JJ.
BYRNES, Judge.
Appellant, Ann Mexic, appeals a judgment granting appellee's, Succession of Rosina Pulitzer Mexic, Motion to Dismiss Abandoned Suit. We affirm.
Appellant, Ann Mexic asserts that she is a judgment creditor of Simon Mexic, heir and legatee of his mother, Rosina Pulitzer Mexic. Simon Mexic filed an act of Renunciation of Succession Already Opened into his late mother's succession proceedings on April 13, 1989.
Appellant, Ann Mexic filed a Petition to Annul Renunciation and for Authority to Accept Succession on Behalf of Debtor into the Succession proceedings on June 10, 1991. The citation and petition were served on the Succession through its attorney on June 19, 1991, and upon Simon Mexic on June 24, 1989. Motions for Extension of Time within which to file responsive pleadings were filed on behalf of the Succession on July 16, 1991, and on behalf of Simon Mexic on August 6, 1991.
There matters rested for over five years. It was not until April 4, 1997, that Ann Mexic took the next step in pursuit of her petition to annul Simon's renunciation when she filed a Motion for Preliminary Default. The attorney for the Succession responded by filing a Motion to Dismiss Abandoned Suit on April 10, 1997. A hearing was held on the motion to dismiss on May 9, 1997, and Ann Mexic's *224 petition was dismissed without written reasons.
Ann Mexic filed a motion for rehearing and/or new trial on May 15, 1997, which motion was denied. Ann Mexic appeals the original judgment and the denial of the motion for new trial.
LSA-C.C.P. art. 561A as it read at all times pertinent to these proceedings provided that:
A. An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years, unless it is a succession proceeding:
(1) Which has opened;
(2) In which an administration or executor has been appointed; or
(3) In which a testament has been probated.
this provision shall be operative without formal order, but on ex parte motion of any party or other interested person, the trial court shall enter a formal order of dismissal as of the date of its abandonment. However, the trial court may direct that a contradictory hearing be held prior to dismissal. [Emphasis added.]
The exception for successions to the five year dismissal rule was added to LSA-C.C.P. art. 561 by Act 670 of 1983, but it did not represent a change in the law:
We conclude that the 1983 amendment of article 561 did not change the intention of the law as it existed prior thereto. This amendment was merely a recognition by the legislature of what the law already was, and, as such, it was interpretative and could be applied retroactively without divesting anyone of a vested right.
Matter of Succession of Forman, 563 So.2d 439, 440 (La.App. 1 Cir.1990), writ denied 568 So.2d 1063 (La.1990).
Ann Mexic argues that LSA-C.C. art. 1071 requires citation of the renouncing debtor only, and that, although the succession was cited, she was not required to do so. It is the succession representative who brought the motion for abandonment in this case. Ann Mexic contends that as the succession representative had no interest in bringing the motion to dismiss, the motion to dismiss should have been dismissed out of hand. LSA-C.C. art. 1071 provides that the motion may be brought by any party. This language is certainly broad enough to include the succession, and Ann Mexic did in fact cite the succession in spite of the fact that she may not have been under any legal compulsion to do so. The succession representative has the authority to file a motion to dismiss based on abandonment.
The exception in LSA-C.C.P. art. 561 for opened successions is in recognition of the fact that uncontested succession proceedings may remain open for years while assets are collected and managed, and as nothing is contested, there is no prosecution or defense under these circumstances.
The terms "prosecution" and "defense" as used in this article suggest a contest, a controversy between at least two parties. Unless some action in a succession proceeding is contested, there is no "prosecution" or "defense" to go forward with.... The purpose of article 561 is to prevent the matter from becoming stale to the disadvantage of an adversary.
Matter of Succession of Forman, 563 So.2d 439, 440 (La.App. 1 Cir.1990), writ denied 568 So.2d 1063 (La.1990).
Ann Mexic attempts to characterize her petition to annul as non-controversial because no response was filed by the renouncing heir. It is not the failure of a party to respond that determines the adversarial nature of an action. If that were the case, a dormant personal injury petition that lay unanswered for more than five years would be considered uncontested and, consequently, not subject to dismissal for non-prosecution. However, it is obvious that LSA-C.C.P. art. 561 was designed to dispose of just such long dormant claims. Thus the question concerning LSA-C.C.P. art. 561 is not whether a matter is actually contested, but whether it is controversial or adversarial by nature. In other words, the adversarial nature of a proceeding is not determined by whether the action is actually contested.
*225 The intrinsically adversarial and controversial nature of Ann Mexic's claim is demonstrated by the fact LSA-C.C. art. 1071 requires that the renouncing debtor or his representative be cited and that the requested relief is not automaticthe creditor must first prove that the debtor refuses to accept the succession, that the renunciation was fraudulent, and that the creditor was prejudiced. Succession of Neuhauser, 579 So.2d 437 (1991). The burden is on the creditor to prove these elements and the silence of the debtor does not discharge this burden. This conclusion is reinforced by the fact that in pursuit of her petition, Ann Mexic filed a Motion for Preliminary Default. Such a motion would have no place in an action that was not presumptively adversarial in nature.
Default judgments arise out of the failure of the defendant to appear by answer or exception to refute the plaintiff's prima facie case after having had the due process opportunity to do so, i.e., service of process containing proper notice of what is at stake. LSA-C.C.P. art. 1701, 1702 and 1703. The theory of the default is that the burden of proof shifts to the defendant after the plaintiff proves up a prima facie case at the default confirmation and the defendant does not carry this shifted burden by virtue of his failure to make an appearance on the record. Default is not based on the theory that "silence gives consent", i.e., the failure of the defendant to answer cannot be construed as agreement with the plaintiff's allegations dispensing with the necessity for proof of at least a prima facie case. Implicit in the LSA-C.C.P. art. 1703 requirement that the plaintiff prove up a prima facie case before judgment by default may be granted is the presumption that the defendant's failure to appear constitutes a tacit denial and opposition to the plaintiff's claim. In other words, if the defendant's failure to appear could be construed as some form of consent, there would be no need to require the plaintiff to prove up a prima facie case. [Emphasis added.]
Spear v. Thong Ngoc Tran, 96-CA-1490, p. 6 (La.App. 4 Cir. 9/18/96); 682 So.2d 267, 270-271. Thus, Ann Mexic's attempted confirmation of the default reinforces our conclusion that the proceedings she instigated by filing the petition to annul are inherently controversial and adversarial in nature, and that where the renouncing heir is silent, his opposition is legally presumed.
As the Supreme Court explained in Succession of Neuhauser, supra, 579 So.2d at 442:
[T]here are serious policy considerations that weigh against permitting a creditor to assail the renunciation of a legacy or an inheritance merely because it has increased the debtor's insolvency. If creditors could prevent disclaimers by heirs merely because they are insolvent, these creditors would receive more than they bargained for. Evidence indicates that creditors in evaluating risks ordinarily show little interest in their debtors' expectancies.... Further, the legitimate motives of familial devotion and estate planning that may underlie renunciations arguably should not be threatened or frustrated, and therefore they should not be vulnerable to attack unless there are grounds to claim that the renouncing party's intent was fraudulent.
This language quoted from Succession of Neuhauser is a further indication that the burden is on the party opposing renunciation. Succession of Neuhauser enunciates the rule that far from automatically granting a creditor's opposition to a renunciation just for the asking, the courts view such opposition with great care and little sympathy, choosing instead to favor the heir's right to renounce in preference to the creditor's opposition, except in those instances where the creditor can show both fraud and prejudice. In the instant case Ann Mexic has made no showing of fraudulent intent.
It is the succession proceeding itself that is referred to in LSA-C.C.P. art. 561, not proceedings within the succession proceeding that are contested. Cf. Succession of Knox, 579 So.2d 1164 (La.App. 2 Cir.1991). The judgment of the trial court that is the subject of this appeal did not dismiss the succession. It merely dismissed a contested action within the succession that was abandoned.
*226 For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.